UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHLEEN A. HURTGAM,

                                        Plaintiff,

                                                        **Hon. Hugh B. Scott**

          v.
                                                        07CV716S

                                                        **Report
                                                        &
LYNDONVILLE CENTRAL SCHOOL,                             Recommendation**
MATHEW PENROD, BARBARA DEANE-
WILLIAMS, NANCY GOOD,

                                        Defendants.


This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 38; cf. Docket No. 8 (initial non-dispositive referral Order, Feb. 8, 2008)).

The instant matters before the Court are (a) defendants' motion for summary judgment

(Docket No. 29[1]) and (b) defendants' motion to strike references in plaintiff's responding papers

---

[1]In support of this motion, defendants submitted the declaration (with exhibits) of
Mathew Penrod, Docket No. 30; the declaration (with exhibits) of Barbara Deane-Williams,
Docket No. 31; defense counsel's declaration (also with exhibits), Docket No. 32; defendants'
memorandum of law, Docket No. 33; statement of facts pursuant to this Court's Local Civil Rule
56.1, Docket No. 34; and amended statement of facts, Docket No. 36, as well as certificates of
service, Docket Nos. 35, 37; reply declarations by defense counsel, Docket No. 44, and Barbara
Deane-Williams, Docket No. 45; defense reply memorandum, Docket No. 45.
          In opposition, plaintiff submitted her statement of facts in dispute, her memorandum of
law, her own declaration (with exhibits, including her entire deposition testimony transcript), and
her attorney's declaration, Docket No. 43.

to the contents of settlement discussions (Docket No. 48[2]).  Given the interrelationship between the motion to strike and the summary judgment motion and for judicial efficiency, both motions will be considered in this Report (see Docket No. 52), although the motion to strike could be decided separately in an Order.  Initially, responses to the summary judgment motion were due by March 12, 2010, with any reply due by March 26, 2010, and that motion being deemed submitted (without oral argument) on March 26, 2010 (Docket No. 40; see Docket No. 39, initial briefing schedule).  Upon the stipulation of the parties to further extend this briefing schedule (Docket No. 41), responses to the dispositive motion were due by March 26, 2010, any reply was due by April 15, 2010, and that motion then was deemed to be submitted as of April 15, 2010 (Docket No. 42).  But with the filing of the defense motion to strike, plaintiff's response to that new motion was due on May 3, 2010, with both motions then being deemed submitted (without further oral argument) on May 3, 2010 (Docket No. 52).

## BACKGROUND

In this Title VII and Americans with Disabilities Act and other anti-discrimination action, plaintiff (as she summarized her claims in response to this motion, see Docket No. 43, Pl. Memo. at 1) alleges discrimination against her on the basis of her age, gender, and disability, and retaliation against her for raising issues of discrimination.  The discriminatory actions "included exclusion from participation in extracurricular events, imposition of work standards which were unwarranted and, when the new and heavier work loads and standards were ostensibly meant for more people than Ms. Hurtgam, they were not enforced against other, similarly situated

_____

[2]In support of this motion to strike, defendants submitted the declaration of defense counsel, Docket No. 50; memorandum of law, Docket No. 49.

employees" (id.). Defendants then transferred plaintiff from the sixth grade in which she had been teaching to the fourth grade (requiring learning a new curriculum and preparing the students for additional standardized tests) (id. at 1-2).

She alleges that she was hired as a tenured elementary school teacher with defendant Lyndonville School District (or the "district"), teaching third grade and kindergarten since 1981. In October 1988, she and her late husband suffered an automobile accident which left her suffering from post traumatic stress disorder. She returned to work with the defendant district at incremental stages. In 1992-93 she was asked and agreed to teach sixth graders. In 1993, she delivered a baby who suffered severe birth complications, causing plaintiff to have a post traumatic stress disorder relapse. Meanwhile, from 1993 to 2002, plaintiff's evaluations were excellent. (Docket No. 13, Am. Compl.)

Plaintiff alleges that there was pay discrimination within Lyndonville Middle School, with fifth and sixth grade teachers earning less than the seventh and eighth grade teachers. Plaintiff was labeled as "adversarial" when she sought to have this inequity rectified. (Id. ¶ 23.) In the fall of 2002 and January 2003, plaintiff's close family members suffered accidents or death, causing her further anxiety (id. ¶¶ 25-27). She took time off in 2003, returning in the fall of that year (id. ¶¶ 27-28). She claims that she was not allowed to help with the annual school musical as a reprimand for her taking sick leave, and not for the pretextual reason of easing her load (id. ¶ 29).

On May 26, 2005, defendant Mathew Penrod, principal at Lyndonville Middle School, sent an e-mail to plaintiff's colleagues and the superintendent of schools disclosing plaintiff's post-traumatic stress disorder and other confidential matters, causing plaintiff extreme distress

(id. ¶ 33). In June of that year, she received a less than stellar performance evaluation (id. ¶ 34). On Labor Day 2005, she suffered a severe medical emergency requiring major surgery, with her returning to work in January 2006 (id. ¶ 35). When she came back, she found the furniture in her room rearranged and replaced with older, shabbier, and larger furniture, reducing the open space in the room (id. ¶ 36). Plaintiff raised this issue with defendant superintendent Barbara Deane-Williams (id. ¶ 38).

In April 2006, plaintiff was reassigned to teach fourth graders, with an additional work load in teaching a new curriculum and preparing students for three standardized tests (rather than two tests given to sixth graders) (id. 41). Historically, this move is not done to veteran teachers approaching retirement (id.). Plaintiff again met with superintendent Deane-Williams regarding the anxiety of the situation and plaintiff's dealings with Penrod. On May 1, 2006, plaintiff contemplated retirement and was willing to accept an incentive of $15,000 that was offered by the district to Tier I teachers (id. ¶ 43).

Meanwhile, plaintiff arranged to observe fourth grade classes, contacting defendant Nancy Good, the principal of her potential new school. At a meeting with plaintiff, Good berated plaintiff for being "unprofessional" and later publicly vented her anger toward plaintiff in front of other teachers (id. ¶ 44).

In June 2006, superintendent Deane-Williams told plaintiff that the retirement incentive would be conditioned upon plaintiff waiving her rights to pursue future litigation against the district (id. ¶ 45), but in August 2006 plaintiff declined to accept the conditions for her retirement incentive and resigned (id. ¶ 46). In September 2006, plaintiff began teaching fourth graders and in November 2006 she retired from the district (id. ¶¶ 47-48).

4

*Plaintiff's Claims*

The first cause of action in the Amended Complaint[3] alleges that the Lyndonville School District discriminated against her on the basis of her gender, in violation of Title VII, 42 U.S.C. § 2000e, by treating her less favorably than male teachers (id. ¶¶ 50-53).  The second cause of action alleges that the district violated the Americans with Disabilities Act, 42 U.S.C. §§ 12100 et seq., by refusing to accommodate plaintiff's disability (id. ¶¶ 55-58), presumably her post-traumatic stress disorder and related anxiety.  The third cause of action asserts gender discrimination by the district, in violation of New York State Human Rights Law, N.Y. Exec. L. §§ 290 et seq. (id. ¶¶ 60-64), while the fourth cause of action alleges disability discrimination under the Human Rights Law (id. ¶¶ 66-69).  In the fifth cause of action, plaintiff alleges an age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") (id. ¶¶ 71-74), while the sixth cause of action alleges a similar age discrimination claim under the New York Human Rights Law (id. ¶¶ 76-79).  In the seventh cause of action, plaintiff alleges that the district retaliated against her in violation of federal law (id. ¶¶ 81-83), and in the eighth cause of action allege similar retaliation under the New York Human Rights Law (id. ¶¶ 85-87).  In the ninth cause of action, plaintiff alleges that the individual defendants aided and abetted the discrimination against her (id. ¶¶ 89-98).  She claims lost income, including supplemental wages for lost extracurricular work, lost pension benefits, payment of her

---

[3]Plaintiff, then proceeding pro se, filed her initial Complaint on October 26, 2007, Docket No. 1, which defendants answered on February 4, 2008, Docket No. 6.  Counsel appeared for plaintiff and moved for leave to amend her Complaint on February 11, 2008, Docket No. 9, which was granted, Docket No. 12.

medical costs, compensatory damages for pain and suffering, punitive damages, costs, and other relief (id. WHEREFORE Clause).

Defendants answered the Amended Complaint on April 9, 2008 (Docket No. 15).

*Defense Summary Judgment Motion*

Defendants filed their present motion on January 29, 2010 (Docket No. 29). As they termed this case, "the gist of [plaintiff's] complaint is that she could not get along with her supervisor, Mathew Penrod, while she was employed as a teacher at Lyndonville Central School District" (Docket No. 33, Defs. Memo. at 1). Plaintiff testified at her deposition that she would prefer a change in supervision (id.; Docket No. 32, Defs. Atty. Decl., Ex. I, Tr. at 41). According to defendants, that change was offered in having plaintiff teach fourth graders in the elementary school (under the supervision of defendant Good) but plaintiff had objections moving to that grade and eventually retired without teaching there (Docket No. 33, Defs. Memo. at 1). They conclude that "this case is a classic example of a plaintiff trying to transform a personality conflict into a discrimination case by accusation," (id.)

First, defendants argue that many of plaintiff's claims are time barred since they were not commenced within 300 days of the alleged discriminatory act (id. at 7). Defendants contend that plaintiff filed her charge of discrimination on March 12, 2007 (id.; Docket No. 32, Defs. Atty. Decl., Ex. E; cf. Docket No. 13, Am. Compl. ¶ 10(a) (alleging that plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 1, 2006), which defendants argue plaintiff incorrectly stated the date, Docket No. 33, Defs. Memo. at 7). In their reply, defendants note that plaintiff dated her EEOC charge on March 1, 2006, and the document was stamped received on the next day (Docket No. 46, Defs. Reply Memo. at 1 &

n.3; Docket No. 32, Defs. Atty. Decl. Ex. E). Defendants also contend that her New York State Human Rights Law claims are time barred, since that statute has a one-year statute of limitations (Docket No. 33, Defs. Memo. at 9), N.Y. Exec. L. § 297(5). Alternatively, they argue that the state law claims were not withdrawn from the New York State Division of Human Rights, depriving this Court of jurisdiction over them, and these pendent claims should be dismissed (Docket No. 46, Defs. Reply Memo. at 1n.1; cf. Docket No. 43, Pl. Memo. at 23 (conceding that pendent claims remain before the Division of Human Rights)).

Next, defendants argue that plaintiff fails to establish a prima facie case of gender or age discrimination since she had not suffered an adverse employment action (Docket No. 33, Defs. Memo. at 9-13). Defendants conclude that plaintiff cannot establish circumstances that give rise to an inference of discrimination or rebut the district's legitimate, non-discriminatory reasons for its actions (id. at 13-15). Further, defendants argue that she cannot establish a prima facie case of retaliation (id. at 15-16). As for her Americans with Disabilities Act claims, defendants point out that plaintiff never requested accommodation nor provided medical documentation to support her need (id. at 16-19). Finally, defendants conclude that there is no liability for the individual defendants under the ninth cause of action, since the aiding and abetting allegation does not cite any provision of law that was violated by them (id. at 19-20).

Plaintiff contends that the material facts are in dispute (Docket No. 43, Pl. Memo. at 2; see generally id., Pl. Statement of Facts in Dispute). As for her claimed discrimination due to her disability, plaintiff pointed out instances when she was penalized for taking off time following her taking leave for medical reasons as well as Penrod's 2005 e-mail disclosing her medical condition to the school staff (id., Pl. Memo. at 4-5). As for her age discrimination claim, plaintiff

argues that younger female employees were not docked in pay for their absences while she was docked in April 2004 (id. at 6). As for her gender discrimination claim, she asserts that she was required to submit voluminous lesson plans while a male teacher insisted upon teaching his own lesson plan without first submitting his lesson plans or facing discipline as a result (id. at 6-7). As to retaliation, plaintiff notes that she complained a number of times about Penrod to Superintendent Deane-Williams, but she was rebuffed and later transferred (to another building) to the fourth grade (id. at 7). She concludes that she met the Rule 56 standard for establishing the existence of material issues of fact (id. at 7-9).

On her disability claim, plaintiff argues that she meets both the regulatory definition under the ADA and New York state law definitions for disability (id. at 10-11), a fact defendants noted in their documents (id. at 11-12). Plaintiff did not seek accommodation in the fall of 2003, but defendants perceived her disability and did not allow her to participate in a school musical that she had directed for years before her illness (see id. at 12). She also points out Penrod's e-mail (broadcasting her condition to the school staff) as an egregious example of non-accommodation of her disability and harassment (id. at 12).

As for her age discrimination claim, plaintiff claims that younger teachers replaced her in directing the school musical and she was required to transfer to the fourth grade when other teachers of her age and experience would not (id. at 13). She concludes that she showed that age was a "but for" cause for the alleged discriminatory act, see Gross v. FBL Fin. Servs., Inc., 557 U.S. ___, 129 S.Ct. 2343 (2009).

She refutes defendants' proffered non-discriminatory reasons as being "'unworthy of credence'" (id. at 14, quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143

(2000) (quoting in turn <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)).

As for defendants' statutes of limitations arguments, plaintiff contends that (getting past the different dates when the EEOC charge was filed (<u>cf.</u> Docket No. 43, Pl. Decl. ¶ 67 (claiming that she made a complaint to the EEOC in December of 2006))) the relevant adverse action here was the implementation of the decision to transfer her to a fourth grade class (<u>id.</u>, Pl. Memo. at 22).

In reply, defendants contend that these claims are time barred, that the EEOC charge is filed when the Commission acknowledges receipt with a date stamp on the document (Docket No. 46, Defs. Reply Memo. at 1-2). Hence, the applicable filing date here is March 2, 2007, when the EEOC stamped that it received plaintiff's charge; using that date any claims prior to May 6, 2006, would be untimely under the 300-day limitation periods for the federal anti-discrimination laws claimed by plaintiff (<u>id.</u>). They claim the relevant event was when plaintiff received notice that she would be assigned to a fourth grade class, on April 5, 2006. Since she did not file an EEOC charge on this transfer by January 30, 2007, and asserted no other claims since that date, all of her federal claims are untimely and should be dismissed. (<u>Id.</u> at 3.)

*Defense Motion to Strike*

Defendants object (<u>see generally</u> Docket No. 49, Defs. Memo.) to plaintiff making references to settlement discussions in plaintiff's declaration (Docket No. 43, Pl. Decl. ¶¶ 46, 47) and her memorandum of law (Docket No. 43, Pl. Memo. at 21), wherein she states that as a possible settlement defendants sought plaintiff to forgo any legal claims she may have against the district, concluding that the district believed that there were actionable issues (Docket No. 43, Pl.

Memo. at 21). Defendants argue that Federal Rule of Evidence 408 settlement or attempted

settlement are not admissible when offered to prove the "liability for, [the] invalidity of, or [the]

amount of a claim" (Docket No. 49, Defs. Memo. at 2; see also id. at 1 (citing Fed. R. Civ. P.

56(e)(1), opposition affidavit to summary judgment based upon admissible evidence).

Plaintiff responds that these statements are not protected by Rule 408 and fall within the

exception from that rule, since she provided them to show her attempts at giving notice of

accommodation that she unsuccessfully sought (see generally Docket No. 53, Pl. Memo.).

**DISCUSSION**

I. Defense Motion to Strike

A. Standard

The Court first considers the defense motion to strike (Docket No. 48). Federal Rule of

Evidence 408 provides certain evidence is not admissible "when offered to prove liability for,

invalidity of, or amount of a claim," "the furnishing or offering or promising to furnish–or

accepting or offering or promising to accept–a valuable consideration in compromising or

attempting to compromise the claim; and . . . conduct or statements made in compromise

negotiations regarding the claim . . ." Fed. R. Evid. 408(a)(1), (2)[4]. This exclusion is not required

if the evidence is not offered to prove or disprove liability, id. R. 408(b) (giving examples of

permissible use to show witness bias, to negate contention of undue delay). To oppose a

summary judgment motion, affidavits must "set out facts that would be admissible in evidence,"

Fed. R. Civ. P. 56(e)(1).

---

[4]Omitting exception for statements offered in a criminal case and negotiations of a public
office or agency "in the exercise of regulatory, investigative, or enforcement authority," Fed. R.
Evid. 408(a)(2), not applicable here.

B.     Application

Here, defendants contend that plaintiff's references to the pre-litigation settlement discussions, where the defendant school district made an offer to plaintiff in return for her waiving her legal claims against the district, is her attempt to introduce inadmissible evidence in opposition to defendants' other motion.  Plaintiff now says that statements in her responding declaration did not improperly refer to settlement discussions.  She argues that Federal Rule of Evidence 408 allows admission of these statements where they are offered for purposes not prohibited by that Rule (Docket No. 53, Pl. Memo. at 1, 4).  Here, plaintiff claims that she offering these statements to show her need for an accommodation (that is, not to be transferred to the more challenging fourth grade) by negotiating her retirement, conditioned by defendants' insistence that she not sue (id. at 2-3).  She says that these discussions were to place defendants on notice for an accommodation (retention of her sixth grade class) (id. at 4).

While plaintiff now argues that these statements were essentially not settlement discussions but to show her request for accommodation, they were made in the context of settlement discussions and offering these statements to show her demands for accommodation goes to prove liability (that is, defendants were aware of plaintiff's disability and refused to afford her an accommodation).  As such, these statements are **inadmissible under Rule 408(a)**. Defendants' motion to strike (Docket No. 48) is **granted** and this Court in this Report has not considered the offending statements (Docket No. 43, Pl. Decl. ¶¶ 46, 47) from plaintiff.

The Court next considers the defense summary judgment motion (Docket No. 29).

II.     Summary Judgment Motion–Procedural Standards

A.     Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c).   The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

A motion for summary judgment may be made with or without supporting affidavits, Fed. R. Civ. P. 56(a) (claimant's motion), (b) (defendant's motion).  But, as noted above discussing

the defense motion to strike, when such an affidavit is submitted, it must be made on personal knowledge, setting out facts that would be admissible in evidence, and from an affiant competent to testify as to such matters, Fed. R. Civ. P. 56(e)(1), and the opposing party must respond to such an affidavit by not merely relying upon allegations or denials made in pleadings, but by affidavit or other admissible evidence setting out specific facts showing a genuine issue for trial, Fed. R. Civ. P. 56(e)(2).

B.    Relevant Limitation Periods

Defendants first contend that plaintiff's claims are time-barred, asserting that her claims that arose from 1979 to January 2004 are time barred (Docket No. 33, Defs. Memo. at 7).  Under Title VII, ADA, and ADEA, plaintiff had 300 days from the date of the alleged discriminatory acts to file charges with the EEOC (id.), 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117 (ADA); 29 U.S.C. § 626(d) (ADEA); see also 29 C.F.R. § 1601.13(a)(4)(ii)(A) (EEOC regulations, 300-day period).  As for her state law claims, there is a one-year limitations period after the alleged unlawful discriminatory practice, N.Y. Exec. Law § 297(5) (id. at 9 & n. 27).

C.    Election of Remedies

As for plaintiff's state law claims, defendants contend that, since she elected to proceed before the State Division of Human Rights, she can not now litigate her state law claims in federal court (Docket No. 33, Defs. Memo. at 8 & n.25; see N.Y. Exec. Law § 297(9)).  Plaintiff has conceded that these claims still remain before the Division of Human Rights (Docket No. 43, Pl. Memo. at 23; see also Docket No. 46, Defs. Reply Memo. at 1 n.1).

III.     Substantive Legal Standards

    A.     Title VII

For employment discrimination claims, the burden of proof shifts between plaintiff and defendant.  First, plaintiff bears the burden of raising a <u>prima facie</u> case, that she is a member of a protected class, that she qualified for the position sought, that she suffered an adverse employment action, and that there is an inference of discrimination that lead to the adverse action.  <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802-03 (1973); <u>Bielski v. Green</u>, 674 F. Supp. 2d 414, 420 (W.D.N.Y. 2009) (Larimer, J.); <u>see Liebowitz v. Cornell Univ.</u>, 584 F.3d 487, 498 (2d Cir. 2009).  If plaintiff makes a <u>prima facie</u> case the burden then shifts to defendant to show a legitimate, non-discriminatory reason for its action.  If defendant makes that showing, the burden returns to plaintiff to demonstrate "by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination,'" <u>Bielski</u>, <u>supra</u>, 674 F. Supp. 2d at 420 (quoting <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 221 (2d Cir. 2004), quoting in turn <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).

At issue here is whether plaintiff suffered an adverse employment action.  An adverse employment action is a material adverse change in the terms and conditions of employment, such as terminating or demotion with decrease in wages.  <u>DeMars v. O'Flynn</u>, 287 F. Supp. 2d 230, 245 (W.D.N.Y. 2003) (Siragusa, J.); <u>see Police Benevolence Ass'n v. City of N.Y.</u>, 310 F.3d 43, 51 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 1032 (2003).  An adverse action is more than a mere alteration of job responsibilities.

B.      Americans With Disabilities Act

Plaintiff's ADA claim also is governed by the burden-shifting analysis applicable in sex discrimination cases, Bielski, supra, 674 F. Supp. 2d at 422.  The prima facie case plaintiff has to establish is that her employer is subject to the ADA; that she was a person with a "disability" within the meaning of the ADA; that she was otherwise qualified to perform the essential functions of her job with or without reasonable accommodations; and she either suffered an adverse employment action because of her disability or her employer refused to make a reasonable accommodation for her, id.; see Sista v. CDC Ixis North Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006); Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004). Once plaintiff establishes a prima facie case, the burden shifts to defendant employer to articulate a legitimate, nondiscriminatory reason for its actions, Bielski, supra, 674 F. Supp. 2d at 422. After defendant articulates that reasoning, the burden returns to plaintiff to show that this reason was pretext for discrimination, id. (internal quotation omitted); see Grana v. Potter, No. 06-CV-11763, 2009WL425913, at *6 (E.D.N.Y. Feb. 19, 2009).  In a failure to accommodate case, plaintiff has to show that an accommodation exists, the "analysis shifts to the question whether the proposed accommodation is reasonable; on this question the burden of persuasion lies with the defendant," Jackan v. New York State Dep't of Labor, 205 F.3d 562, 566 (2d Cir.), cert. denied, 531 U.S. 931 (2000); Bielski, supra, 674 F. Supp. 2d at 422, 423 (plaintiff bears burden of production and persuasion that some accommodation existed to allow her to perform essential functions of job; as reasonableness of accommodation, burden of persuasion remains on defendant).

A "disability" under the ADA, 42 U.S.C. § 12102(2)(A)-(C); see 29 C.F.R. § 1630.2(g)

(as well as under the New York State Human Rights Law, N.Y. Exec. L. § 292(21)(a)) is either a

physical or mental impairment that substantially limits one or more major life activities; a record

of such an impairment; or being regarded as having such an impairment (Docket No. 33, Defs.

Memo. at 16-17 & n.50; Docket No. 43, Pl. Memo. at 10-11).  To determine the existence of a

disability, the Court has to consider whether plaintiff is physically or mentally disabled, identify

the major life activity on which she relies, and determine whether that impairment substantially

limits that major life activity, Bragdon v. Abbott, 524 U.S. 624, 631 (1998) (Docket No. 33,

Defs. Memo. at 17 & n.51).

C.      Age Discrimination in Employment

The Age Discrimination in Employment Act ("ADEA") creates a right of action for all

aggrieved by age discrimination in employment, 29 U.S.C. § 626(c)(1), provided "that the right

of any person to bring such action shall terminate upon the commencement of an action by the

[EEOC] to enforce the right of such employee under" that act.  See Chapman v. City of Detroit,

808 F.2d 459, 462-64 (6th Cir. 1986); EEOC v. Consolidated Edison Co., 557 F. Supp. 468, 471-

72 (S.D.N.Y. 1983).  "The ADEA provides, in relevant part, that '[i]t shall be unlawful for an

employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age.' 29 U.S.C. § 623(a)(1)," Gross, supra, 129 S.Ct.

at 2350 (emphasis in original).  "To establish a disparate-treatment claim under the plain

language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the

employer's adverse decision," id. at 2350 (citing Bridge v. Phoenix Bond & Indem. Co.,

16

553 U.S. 639, ___, 128 S. Ct. 2131, 2141 (2008) (recognizing that the phrase, "by reason of,"
requires at least a showing of "but for" causation (internal quotation marks omitted)); Safeco Ins.
Co. of America v. Burr, 551 U.S. 47, 63-64, and n.14 (2007) (observing that "[i]n common talk,
the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical
condition" and that the statutory phrase, "based on," has the same meaning as the phrase,
"because of" (internal quotation marks omitted))).

The Supreme Court recently held in a mixed motive ADEA case that "that a plaintiff
bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of
the evidence, that age was the 'but-for' cause of the challenged adverse employment action,"
Gross, supra, 129 S.Ct. at 2352. The majority noted that the Title VII evidentiary framework of
McDonnell Douglas v. Green, 411 U.S. 792 (1973), has not been uniformly applied in ADEA
cases, Gross, supra, 129 S.Ct. at 2349 n.2 (citing Reeves v. Sanderson Plumbing Products, Inc.,
530 U.S. 133, 142 (2000); O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311
(1996)).

D.      Supplemental Jurisdiction and New York Human Rights Law Claims

Plaintiff also alleges parallel state Human Rights Law discrimination claims. The sex
discrimination claims under the Human Rights Law are governed by the Title VII analysis, see
Bielski, supra, 674 F. Supp. 2d at 420; see also Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1
(2d Cir. 2000).

Defendants argue that the election of remedies provision of that law precludes plaintiff
from litigating her state law claim in federal court once she elected to proceed before the State
Division of Human Rights (Docket No. 33, Defs. Memo. at 8 & n.25).

IV.     Application

    A.     Statute of Limitations

Defendants first contend that plaintiff's claims are time-barred by the 300-day limitations period for asserting Title VII and like claims or the one-year limitations period for the state Human Rights Law claims.  Her last alleged action is her transfer from the sixth to fourth grade in 2006.  Plaintiff argues that her claims are timely because her transfer to the fourth grade was effectuated within 300 days of her filing of the EEOC charge (Docket No. 43, Pl. Memo. at 21-22), although she does not pinpoint when that decision went into effect.

Plaintiff's opposing declaration states that in April of 2006 she was informed of her move from the sixth grade to the fourth grade (Docket No. 43, Pl. Decl. ¶ 40), had discussions with the Superintendent about a possible early retirement (id. ¶¶ 41, 42-44, 46-47), made parallel preparation to begin teaching the fourth grade in a different school (see id. ¶ 45), and then started her duties in the fourth grade in September 2006 (id. ¶ 48).

The parties initially dispute when plaintiff filed her EEOC claim to stop the 300-day limitations period for her federal claims.  Defendants first contended that plaintiff filed on March 12, 2007 (Docket No. 32, Defs. Atty. Decl. ¶ 12, Ex. E; cf. Docket No. 43, Pl. Memo. at 21), and not December 1, 2006, as plaintiff alleged in her Complaint (Docket No. 32, Defs. Atty. Decl. ¶ 12, Ex. E).  Defendants then conceded that the date the March 2007 EEOC charge was received by the EEOC was March 2, 2007, with their acknowledgment letter dated March 12, 2007 (Docket No. 46, Defs. Reply Memo. at 1 & n.3).  Plaintiff, on the other hand, points to the Charge of Discrimination date of March 1, 2007, when she submitted the charge, as the key date (Docket No. 43, Pl. Memo. at 21-22; see Docket No. 32, Defs. Atty. Decl. Ex. E).

Plaintiff did submit a New Charge Questionnaire for Discipline/Demotion to the EEOC, dated December 1, 2006, which the EEOC received on January 29, 2007 (Docket No. 32, Defs. Atty. Decl. ¶ 7, Ex. B). But that questionnaire did not constitute a formal charge, since an EEOC investigator attempted to contact plaintiff to follow up on that questionnaire (id. ¶¶ 8, 9, Ex. C). On February 27, 2007, the investigator sent plaintiff a draft charge based upon information plaintiff sent to the EEOC (id. ¶ 10, Ex. D; see also id. ¶ 11 (plaintiff advised of the 300-day limitations period in order to file her charges)). Plaintiff revised this draft and submitted it on March 1, 2007, and it was stamped received by the EEOC on March 2, 2007 (id. Ex. E). Therefore, the relevant date for plaintiff filing her EEOC charge was **March 2, 2007**.

In order to be timely, the adverse employment action for a charge filed on March 2, 2007, needed to occur here on or after **May 6, 2006**. According to defendants' statement of facts, on April 3 and 5, 2006, Superintendent Deane-Williams met with plaintiff about transferring her to the fourth grade (Docket No. 36, Defs. Amended Statement ¶¶ 16, 17). Plaintiff's responding papers do not dispute this meeting occurred or its timing, but denies that she willingly agreed to the transfer, but tried to make the best of the move in the "spirit of being a team player" (Docket No. 43, Pl. Statement of Disputed Facts ¶¶ 18-20). After discussions with plaintiff and Good, the principal of the elementary school plaintiff would go to, Superintendent Deane-Williams transferred plaintiff (Docket No. 36, Defs. Amended Statement ¶ 19), with plaintiff being notified of the transfer in early April and a letter dated July 26, 2006, reconfirming the transfer (Docket No. 31, Deane-Williams Decl. ¶ 18).

Thus, the complained of adverse employment action here was plaintiff being notified of the transfer in early April 2006. Since plaintiff's EEOC charge was filed on March 2, 2007, her

federal claims prior to May 6, 2006, (including the last act of the transfer in April 2006) are untimely and her claims should be **dismissed**.

This is similar to the facts in <u>Delaware State College v. Ricks</u>, 449 U.S. 253 (1980), wherein the Supreme Court held that the adverse action there, the denial of tenure and eventual termination of a junior faculty member, commenced when the tenure decision was made and the plaintiff was notified, <u>id.</u> at 258. Although the college denied tenure on March 13, 1974, by a formal vote of the board of trustees, the plaintiff in <u>Ricks</u> was given a one-year terminal contract effective until June 30, 1975, <u>id.</u> at 252-53. Plaintiff filed a grievance and the board reaffirmed the denial of tenure on June 26, 1974, offering the terminal contract, <u>id.</u> at 253. The <u>Ricks</u> Court rejected the termination date of the contract as the applicable date because there were no facts allege to support a continuing violation theory after the initial denial of tenure, <u>id.</u> at 259. After rejecting amicus EEOC's offered date of September 12, 1974, when plaintiff signed the termination agreement, <u>id.</u> at 260-61, 254, as the appropriate date, the Supreme Court affirmed the district court that the limitations period had to run by June 26, 1974, when plaintiff was notified that he would be offered a terminal contract because the college, through an "unbroken array of negative decisions," had established its official position and made it apparent to plaintiff by June 26, 1974, <u>id.</u> at 262. See also <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 550 U.S. 618, 626 (2007); <u>Lukovsky v. City and County of San Francisco</u>, 535 F.3d 1044, 1050 (9th Cir. 2008); <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 713 (2d Cir. 1996) (the timeliness of a discrimination claim is measured from the date the claimant had notice of the alleged discriminatory action) applying <u>Ricks</u> analysis as to when claims arose (<u>see</u> Docket No. 46, Defs. Reply Memo. at 2-3). The Court in <u>Ledbetter</u> noted that "the EEOC charging period ran from the

20

time when the discrete act of alleged intentional discrimination occurred, not from the date when the effects of this practice were felt," Ledbetter, supra, 550 U.S. at 627; see Lorance v. AT&T Technologies, Inc., 490 U.S. 900, 907-08 (1989).

Here, the last "discrete act of alleged intentional discrimination" was the transfer to the fourth grade and that occurred when plaintiff was notified of the decision to transfer her, not months later when she started work in the new grade. Plaintiff was notified in April 2006 of the superintendent's decision to reassign her to the elementary school and the fourth grade. Plaintiff's actions confirm that she was aware of that decision, by contacting the elementary school principal and teachers while on a parallel track contemplating early retirement. Plaintiff cannot complain that she was not aware of the decision to transfer her or that it was not final when made in April 2006. The letter in July 2006 confirmed the earlier decision and did not constitute a final act that would make the correspondence the adverse employment action. She does not allege any continuing action from April to September 2006 to make that action the one timely for her present EEOC charge.

Thus, defendants' motion for summary judgment **should be granted on limitations grounds**. Defendants alternatively argued that plaintiff is not entitled to judgment on the merits of her claims. For completeness, this Report next considers these contentions.

B.     Substantive Merits

1.     State Pendent Claims

Taken out of pleading order are plaintiff's pendent state law anti-discrimination claims. As noted above, in addition to the limitations argument, defendants contend that plaintiff elected a state law remedy for these claims and thus cannot pursue these claims in federal court.

21

Defendants point out that plaintiff still has pending before the State Division of Human Rights these state law claims, has elected to proceed there and thus cannot prosecute these claims in federal court. Plaintiff concedes that these claims are still before the state agency, declaring that they are moot until the withdrawal if effective (Docket No. 43, Pl. Memo. at 23). Since neither party has indicated any withdrawal from the Division of Human Rights, plaintiff's state law claims also should be **dismissed** and judgment **granted to defendants** on their motion.

2.      Remaining Federal Claims

Essentially, defendants contend that plaintiff could not get along with her supervisors and she has conflated those disputes into federal anti-discrimination claims without an adequate basis. They conclude plaintiff did not establish prima facie cases either for gender or age discrimination since she had not suffered an adverse employment action. (See Docket No. 33, Defs. Memo. at 9-15.)

a.      Adverse Employment Actions

The first issue here is whether what occurred to plaintiff–taking the last action, reassigning her to a more challenging grade on the eve of her retirement–constitutes an adverse employment action. A plaintiff suffers from an adverse employment action if she

> "endures a 'materially adverse change' in the terms and conditions of employment. . . . To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities,' . . . 'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation,"

Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted) (Docket No. 33, Defs. Memo. at 10 & n.29).  In Galabya, the plaintiff teacher alleged that the transfer from a special education class to a mainstream class (among other allegations) was an adverse employment action in violation of the ADEA, id. at 638-39.  The Second Circuit disagreed, noting that the teacher's compensation and other benefits were not changed in this transfer, id.  A transfer becomes an adverse employment action "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career," id. at 641; see Rodriguez v. Board of Educ., 620 F.2d 362 (2d Cir. 1980).  Other courts have applied Galabya and held that the mere transfer from teaching one grade to another alone did not constitute an adverse employment action, Missick v. New York City Dep't of Educ., No. 07-CV-1494, 2010 U.S. Dist. LEXIS 48292 , at *24-25 (E.D.N.Y. Mar. 22, 2010) (granting defendants summary judgment dismissing Title VII, ADA, ADEA, and New York State Human Rights Law claims); Barros v. Miller, No. 303CV1603, 2005 WL 2416109, at 1, 3-4 (D. Conn. Sept. 30, 2005) (holding transfer from third to fourth grade not adverse employment action).

Here, plaintiff complains that her transfer from the sixth to fourth grade was adverse because other teachers with her seniority would not have been so treated and that the duties of the fourth grade teacher differ from that of the sixth grade teacher.  There were no material changes in her compensation or other terms and conditions, however, with this transfer.  Even the additional responsibilities in preparing fourth graders for additional standardized tests is only an alteration of job responsibilities that is not sufficiently material to be an adverse employment action.  Therefore, defendants' motion for summary judgment dismissing plaintiff's federal anti-discrimination claims on this basis should be **granted**.

b.    Retaliation

Plaintiff establishes a prima facie case for retaliation by showing (a) participation in a protected activity; (b) that defendants knew of the protected activity; (c) an adverse employment action; and (d) a causal connection between the protected activity and the adverse employment action, Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005); Kessler v. Westchester County Dep't of Social Servs., 461 F.3d 199, 204 (2d Cir. 2006).  The burden of proof for a plaintiff to survive a summary judgment motion at the prima facie stage "has been characterized as 'minimal' and 'de minimis'," Jute, supra, 420 F.3d at 173 (citations omitted).

Defendants, in addition to their arguments regarding the non-discriminatory reason for her transfer and the lack of an adverse employment action, argue that plaintiff fails to establish that she engaged in a protected activity (Docket No. 33, Defs. Memo. at 15).  Defendants point to plaintiff's actions in May 2006, ultimately her declining to pursue a formal discrimination complaint as a potential protected activity (id. at 15-16), while plaintiff claims that she suffered previous harassment following her confronting Penrod in 2003 about not allowing her to direct the school's musical (Docket No. 43, Pl. Memo. at 7, 17-18).  But, as defendants note (Docket No. 46, Defs. Reply at 8-9), plaintiff never mentioned discrimination in her written complaints to the superintendent.  Defendants surmise that the protected activity was when she submitted her memorandum of April 28, 2006, to the superintendent (see Docket No. 31, Deane-Williams Decl. ¶ 25(b), Ex. D).  As a result, it is unclear from this record what the protected activity was. Furthermore, as discussed above, there was no adverse employment action, even under the slightly different standard for adverse employment actions in retaliation cases, see Burlington Northern & Santa Fe Co. v. White, 548 U.S. 53, 57 (2006) (retaliatory acts were "harmful to the

point that they could well dissuade a reasonable worker from making or supporting a charge of

discrimination"); Hicks v. Baines, 593 F.3d 159, 161, 165, 169 (2d Cir. 2010). While anti-

discrimination and anti-retaliation standards for adverse action differ, see Hicks, supra, 593 F.3d

at 165 (Title VII's anti-discrimination and anti-retaliation provisions "are not coterminous,"

quoting Burlington Northern, supra, 548 U.S. at 67), both require "a showing of material

adversity," Hicks, 593 F.3d at 165 (emphasis in original), because Title VII "'does not set forth a

"general civility code for the American workplace,""" id. (quoting Burlington Northern, supra,

548 U.S. at 68, quoting in turn Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80

(1998)). As with the adverse employment action standard, "the antiretaliation provision protects

an individual not from all retaliation, but from retaliation that produces an injury or harm,"

Burlington Northern, supra, 548 U.S. at 67.

Here, even if plaintiff established the existence of retaliation, the retaliatory act

complained of (the transfer to the fourth grade) was not material adversity and not harmful

enough that it would dissuade a reasonable teacher from making or supporting a charge of

discrimination, see Burlington Northern, supra, 548 U.S. at 57. Therefore, defendants **should be

granted summary judgment as to this ground**.

c.     Disabilities Discrimination

(1)     Reasonable Accommodation Theory

Defendants point out that, for the second element of her prima facie case under the ADA,

plaintiff never asserted a disability, hence she cannot now claim discrimination claim under the

Americans with Disabilities Act (Docket No. 33, Defs. Memo. at 16-19). Defendants argue that

plaintiff never documented to the district her post-traumatic stress disorder and her complaints

about Penrod which she alleges caused her stress.  This allegation alone does not constitute a cognizable disability (id. at 17).  Plaintiff, however, points to former superintendent Christine Tibbetts' April 2003 e-mail to Penrod (among others) as acknowledging plaintiff's condition, considering plaintiff to be a problem and that she was "emotionally fragile" and an "emotional wreck" (Docket No. 43, Pl. Atty. Decl. Ex. 6; Pl. Memo. at 11-12).

Next, defendants argue, as to the element of reasonable accommodation, that plaintiff failed to engage in reasonable efforts to accommodate her by not providing medical documentation for her condition (Docket No. 33, Defs. Memo. at 18-19).  As with the Title VII claims, defendants argue regarding the last element of an adverse employment action that (assuming plaintiff established a prima facie case), there was a legitimate non-discriminatory reason for those actions, to resolve district staffing issues and the interactions between plaintiff and Penrod (Docket No. 33, Defs. Memo. at 19).

Although plaintiff originally alleged that she requested reasonable accommodations (Docket No. 13, Am. Compl. ¶ 56), plaintiff now contends in response to this motion that she had not asked for an accommodation or demonstrated that she had a disability (Docket No. 43, Pl. Memo. at 11).  As concluded by defendants, plaintiff has failed to establish that reasonable accommodations were sought.  This claim also should be **dismissed** and defense motion for summary judgment **granted on this ground**.

Plaintiff now appears to allege an alternative theory under the ADA, that she was "regarded as" being disabled by defendants, see 42 U.S.C. § 12102(2)(C), which this Court turns to next.

26

(2)       "Regarded As" Disabled

Defendants respond that plaintiff is now articulating a new "regarded as" disabled theory,
that defendants perceived her as disabled.  They conclude that this is not alleged in the Amended
Complaint and should be rejected in response to their motion.   (Docket No. 46, Defs. Reply at 3-
4.)  Even if applying this new theory, defendants conclude that plaintiff still needs to establish
that she was disabled within the meaning of the ADA, that is, that she has an impairment of one
or more major life activities (id. at 5).  The only complaint plaintiff has is that she can no longer
work under Penrod (due to stress) and cannot teach in the fourth grade (also apparently due to
stress).

Assuming this Court considers plaintiff's amended theory under the ADA, "to prove that
the plaintiff is 'regarded as' having an impairment that substantially limits one or more major life
activities" she must show "that the employer regarded the individual as disabled within the
meaning of the ADA," Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998)
(emphasis in original); see Francis v. City of Meriden, 129 F.3d 281, 285-86 (2d Cir. 1997)
(Docket No. 46, Defs. Reply Memo. at 5 & n.17).  In order to prevail, plaintiff needs to adduce
evidence that defendants regarded her as having an impairment that substantially limited a major
life activity, Colwell, supra, 158 F.3d at 646.  As noted in Francis, "a plaintiff cannot state a
claim under the 'regarded as' prong of the ADA . . . simply by alleging that the employer
believes some physical condition . . . renders the plaintiff disabled.  Rather, the plaintiff must
allege that the employer believed, however erroneously, that the plaintiff suffered from an
'impairment' that, if it truly existed, would be covered under the statutes and that the employer
discriminated against the plaintiff on that basis," 129 F.3d at 285 (adopting reasoning of

27

<u>Andrews v. Ohio</u>, 104 F.3d 803, 810 (6th Cir. 1997)).  If the major life activity claimed is the ability to work, the plaintiff must be perceived as unable to perform a broad class of jobs, <u>Giordano v. City of N.Y.</u>, 274 F.3d 740, 749-50, 747-48 (2d Cir. 2001) (quoting standard from 29 C.F.R. § 1630.2(j)(1)); <u>Hammond v. Keyspan Energy</u>, 349 Fed. Appx. 629, 631 (2d Cir. 2009) (summary order)

Here, plaintiff has not shown that defendants regarded her has having a major life activity that was impaired, thus her ADA claim on a "regarded as" theory also **should be dismissed** and defendants' summary judgment motion on this claim **should be granted**.

## CONCLUSION

Based upon the above, defendants' motion to strike certain portions of plaintiff's responses for discussing settlement conversations (Docket No. 48) is **granted**; the Court has not considered the stricken portions of plaintiff's responses (Docket No. 43, Pl. Decl. ¶¶ 46, 47) in considering defendants' summary judgment motion.  As for that dispositive motion, it is recommended that defendants' motion for summary judgment (Docket No. 29) be **granted on statute of limitations grounds or alternatively on the substantive merits**; namely, that plaintiff's claims are time barred but if not, that plaintiff failed to show a prima facie case for her claims of discrimination under Title VII, ADEA, and ADA.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        June 11, 2010